# Zurn *versus* Noedel and Wife.

1. A consignee to whom goods are sent to be sold on commission is not entitled to commissions for making the sale if he violates his instructions as to the sale.

2. If a married woman entitled to her separate earnings under the Act of April 3d, 1872 (P. L., 35), directs the holder of her note, the proceeds of which she invested in her business, to appropriate a sufficient amount to pay the same out of the amount due her by him in a business transaction, and also out of the same to appropriate a sufficient amount to pay a claim for which she is not legally liable, she cannot, in an action of assumpsit against him to recover the amount due her, prevent the amounts so applied by her from being set off against her claim.

3. Bovard *v.* Kettering, 5 Out.; 181, followed.

May 20th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, STERRETT and GREEN, JJ. TRUNKEY and CLARK, JJ., absent.

ERROR to the Court of Common Pleas of *York county:* Of January Term 1886.

Assumpsit by G. W. Noedel and Bertha Noedel, his wife, in right of wife against Louis Zurn.

The case was referred to James W. Latimer, Esq., as Referee, under the Act of April 9th, 1868 (P. L., 780), who filed the following report:

[Zurn v. Noedel.]

This is an action of assumpsit. The original *narr* contained only the common counts for goods sold and delivered, work and labor, and the money counts.

On March 16th, 1881, an amended *narr* was filed containing special counts, averring consignments by the plaintiffs to defendant for sale on commission of a large quantity of cheese, and charging defendant with a failure and refusal to account and pay over proceeds to plaintiffs.

On July 20th, 1885, an additional count was filed by leave of court, averring the consignment, by plaintiffs to defendant, of the cheese, and charging defendant with negligence in the custody of same, as well as in the sale of same, whereby it was alleged that a large portion of the cheese was injured and deteriorated in value, and with selling the same at auction, to the damage of the plaintiffs, &c.

To the original *narr* and first amendment, the defendant pleaded non assumpsit, payment with leave, and subsequently, set-off; and to the last amended *narr* he pleaded not guilty.

I find the following facts:

Bertha Noedel, the use plaintiff, is the wife of G. W. Noedel, and was married to him in the year 1853.

On October 29th, and November 8th, A. D. 1875, the personal property of G. W. Noedel was sold by the sheriff of York County on executions issued against him. Among his personal property, sold on October 29th by the sheriff, was a large quantity of Limberger cheese, partly manufactured, but then unfinished, in the manufacture of which he had been engaged before and at the time of the sale. This unfinished cheese, some wrapping paper, tin foil, and cheese cases, amounting to $113.50, was bought in by Joseph Lebach for Bertha Noedel.

And at the second sale, on November 8th, Joseph Lebach purchased for her a considerable quantity of other personalty, including grain, hay, straw, manure, horses, &c., amounting to $438. Of this latter amount $375 was repaid to Lebach by the check of W. C. Chapman, Esq., (then of counsel for Noedel and wife,) dated November 9th, 1875, on Weiser, Son & Carl, drawn to Lebach's order, and Lebach on same date assigned to Mr. Chapman by bill of sale all the personalty bought by him at the second sale as above stated.

And for $113 of the amount of his purchase at the first sale, Lebach receipted to Mrs. Nœdel, on November 17th, 1875, at Mr. Chapman's office, when and where the parties plaintiff and defendant, met with their respective counsel, Messrs. Chapman and Wanner, and Joseph Lebach. Bertha Nœdel then and there gave her note bearing that date, to defendant for $402, payable at thirty days; in return for which defendant

gave her his check for $400, drawn to her order, which she endorsed to Mr. Chapman, who received it as payment of the $375 previously paid by him to Lebach, and of $25 previously advanced by him to G. W. Noedel for some purpose (not disclosed in the evidence,) connected with this cheese business. At the same time Mr. Chapman assigned to Zurn the personalty which Lebach had previously assigned to him. Lebach at the same time and place delivered to Mrs. Noedel the receipt already referred to for $113, in full payment for the personalty bought by him for her at the first sale. But the $113 was not paid to him on the occasion of this meeting at Chapman's office, nor was it paid out of the proceeds of Zurn's check. The receipt affords the only positive evidence that this amount was paid to Lebach at all. He was not called to testify; Mrs. Noedel testified that she gave her husband money to pay Lebach; and Mr. Noedel testified that he could not remember when or by whom Lebach had been paid. Mrs. Noedel at this time had a separate estate more than sufficient to pay for all the purchases made at the two sales.

On November 8th, 1875, the petition of Bertha Noedel was presented to the Common Pleas of York county, praying for the benefit of the Act of Assembly approved April 3d, 1872, securing to married women their separate earnings, which was granted.

The cheese purchased at sheriff's sale, was afterward finished, packed in boxes, after being wrapped in tin-foil and paper, and shipped to defendant, who was a commission merchant doing business at No. 10 South Front street, Philadelphia, for sale on commission. G. W. Noedel, agent for Bertha Noedel transacted the business in her name and for her use.

The shipments were as follows:

Twenty boxes, aggregating net weight 2371 lbs. were shipped November 30th, 1875, rec'd by defendant Dec. 6th, 1875. Forty boxes aggregating net 4244 lbs., shipped Dec. 4th, 1875 and received by defendant on or after Dec. 6th, but date of receipt not shown. Thirty-six boxes aggregating net 4435 lbs., shipped Dec. 9th, and rec'd by defendant but date of receipt not shown. Fifteen boxes aggregating 1808 lbs., shipped Dec. 13th, and rec'd by defendant, but date of receipt not shown. Making in all 111 boxes aggregating net 12,808 lbs.

Letters of instruction were sent with each consignment which are in evidence.

The first letter dated Nov. 29th, 1875, directed the consignee to "make the best price you can for it."

The second letter expressed the hope "that you are making good prices."

[Zurn v. Noedel.]

The third letter accompanying consignment of Dec. 9th says, "you need not hurry the sale; I need no money before the beginning of March; only good prices I wish to have, about 15 cents.

The letter accompanying consignment of Dec. 13th, said, "sell to the highest price as the sale is not pressed."

With the letter of Nov. 29th, 1875, was sent the sum of $100 on account of Mrs. Noedel's note for $402.

The business was conducted and letters written by G. W. Noedel in Bertha Noedel's name and as her agent.

Some tin-foil and other goods were furnished to Mrs. Noedel by defendant, amounting to $29.02; and $10 in cash was paid by defendant to her agent G. W. Noedel.

In the course of the correspondence defendant repeatedly asked for payment of the balance of the $402 note.

In her letter of Dec. 13th, in connection with a promise to remit money on account of the $402 note she says (obviously referring to the consigned cheese) "you have enough to cover you."

In her letter of Feb'y 12th, she demanded an account of sales.

In her letter of Feb'y 26th, she informs him that she requires the money, realized on the consignment, by March 1st, and asking an advance of $1,000.

In her letter of March 15th, she reproaches him for not accounting, and asks an advance of $200.

On May 17th, 1876, consignee wrote Mrs. Noedel requesting her to remove the balance of her cheese, and that in her failure to do so he would store it at a public storehouse at her risk.

On May 31st, 1876 he wrote her that the unsold balance of cheese would be sent to Comley & Co., auctioneers, for sale at auction on June 7th, then next ensuing, unless ordered to the contrary.

Sometime after mailing the above stated letter to plaintiff, but at a time not precisely fixed by the evidence, defendant sent to Comley & Co., auctioneers, the balance of plaintiff's cheese said to have been 68 boxes and a barrel containing about 1½ boxes, and the same was sold at public sale on June 9th, 1876, realizing the net amount of $29.97.

The cheese was in good order and condition when shipped to and received by defendant. It was spoiled when sold by Comley & Co. The cause of its deterioration is not disclosed in the evidence.

I cannot find from the evidence that any demand was made by plaintiff's agent, G. W. Noedel, on the defendant Zurn for a return of the cheese in March, 1876. Such demand was

[Zurn *v.* Noedel.]

averred by Noedel to have been made, and denied by Zurn, thus leaving the evidence on this point in equipoise.

I cannot find from the evidence that any account of sales was ever rendered by defendant to plaintiff or her agent G. W. Noedel.

On June 11th, 1875, a note of that date, with warrant of attorney to confess judgment, for $1500 payable in one year, was given by G. W. Noedel and Bertha his wife, these plaintiffs, to Louis Zurn, this defendant, on which judgment No. 526, April 7th, 1875, was entered. This judgment was in 1881 revived by adverse *scire facias*, judgment being taken in default of an affidavit of defence.

After careful consideration, in the light of such authorities as I have been able to find, I am constrained to reject the book entries offered in evidence by the defendant, referred to in the deposition of Victor L. Cavanna, except those containing charges of goods sold and delivered to Mrs. Noedel, which were stated to be in Cavanna's own handwriting. The entries rejected are not the record of any transactions between plaintiffs and defendant; but are the record of transactions between the defendant and other parties. Some of them bear evident marks of alteration. However honestly made, these require explanation to render them admissible, and no explanation was offered. They were simply charges of cheese sold by Zurn, in the ordinary course of business, not to Mrs. Noedel, but to other people. They were offered in their character of original entries to show not only that the cheese charged in them was hers, but to show prices and quantities. As against the parties to whom charged, these entries would be competent legal evidence, as against her they cannot; especially as the marks relied on to identify the cheese charged therein as Mrs. Noedel's, are of an equivocal character.

If the defendant Zurn kept any proper accounts with his consignor, Bertha Noedel, he has failed to produce or offer them in evidence in this trial.

Having rejected the book entries, which are the only evidence in detail of the several sales aggregating the 41½ boxes, alleged by plaintiff to have been sold at private sale, I am relieved of the necessity of determining whether or not the cheese so sold was in whole or only in part (and if the latter in what part) Mrs. Noedel's.

The contention of the plaintiffs is: That the letters of consignor to consignee limit the minimum price at which the cheese was to be sold, to 15 cents per pound; that consignee having, according to his own admissions, sold the consigned cheese, part at private sale and part at auction, at less than that price, is liable to the plaintiffs in damages in an amount equal

[Zurn v. Noedel.]

to what the consignment would have produced at the price limited; or at least equal to what it would have amounted to at the price (average) 11½ cents a pound, at which defendant alleged he had sold 41½ boxes at private sale; that having violated his instructions he is entitled to no commissions; that he cannot set off, against plaintiff's claim, the goods sold to her by him, nor the principal and interest of the $402 note, nor of the $1,500 judgment, because Mrs. Noedel at the date of these transactions was a *feme covert* and as such not bound by her contracts; that the set-offs for freights, insurance and drawbacks allowed to purchasers were not properly proven, nor authorized by plaintiffs.

The contention of defendant is that even as against her consignee, who accepted the consigned goods as her property, she must in this suit prove ownership resulting from a purchase with her own separate funds, not derived from her husband; that she has failed to do this; and that, on the contrary, the weight of the evidence is that she purchased this cheese with money borrowed from the defendant Zurn; that defendant was not limited by his instruction on the price at which the consignment•was to be sold, and is only chargeable, in this suit, with the market price, less the disbursements claimed by defendant and disputed by plaintiff as above set forth; that the $402 note and the $1,500 judgment are proper and legal set-offs against plaintiffs' demands; and that defendant having given notice to plaintiff to remove the balance of her cheese in a specified time and informed her that if not ordered to the contrary he would sell the same at auction, had a legal right to so sell it.

The evidence in this case sufficiently shows the purchase of the cheese (afterwards consigned to Zurn) by Mrs. Noedel with money belonging to her separate estate. Hence it was her property when consigned to the defendant. Even if this had not been so, the defendant would have been estopped from disputing her title, having accepted the goods as hers, and entered into an implied contract, to account for them to her as hers. Where the bailor has obtained the goods by fraud or not, and they or the proceeds of them are claimed in the hands of the bailee by a third party who is the legal owner, the bailee may defend against the demand of the bailor by setting up the legal title of the third party: Floyd *v.* Bovard, 6 Wr., 75; King *v.* Richards, 6 Wharton, 418. But such is not this case. Here no third party is claiming the goods or the proceeds. No outstanding right or title is set up by anybody. This consignor claims the right to put in his own pocket the proceeds of the consignment, on the allegation that the consignor has failed to show affirmatively a legal

title to the goods. No cited case goes this length, and to permit it would be to allow the defendant to perpetrate a gross fraud, in violation of his contract and of his duty as her consignee.

The instructions accompanying the consignments were not sufficiently clear, positive, unambiguous, and explicit, to amount to a command not to sell below the limited price, 15 cents; but they were at least a sufficient expression of the consignee's wishes and expectations, to forbid many of the sales he claims to have made (at 4, 6, 10 cents). Further, he was bound to report to her immediately, every sale made by him at less than the limit, and to keep her constantly informed of all matters affecting her interests: Brown *v.* Arrott, 6 W. & S., 402; Devall *v.* Burbridge, 4 W. & S., 305; 1 Am. Leading Cases, 853; to ask for more explicit instructions rather than act under ambiguous ones; if the cheese was unsalable at the limited price, or was of bad quality, or deteriorating, he was bound to inform her promptly. He did none of these things. He claims to have sold $41\frac{1}{2}$ boxes of her cheese for $541.41, an average of about $11\frac{1}{2}$ cents a pound, or $3\frac{1}{2}$ cents below her limit, without any report to her; and the balance of $68\frac{1}{2}$ boxes he sold at auction, as rotten and worthless for from $\frac{1}{2}$ cent to 1 cent per pound, after notice to her of his intention to so sell it, but without a word in regard to its alleged worthless condition. For these violations of his contract duty as consignee he must respond in damages equal to the amount of her loss resulting therefrom.

The most difficult question in the case is as to the quantum of damages. The position of the plaintiffs that the measure of damages is the difference between the price limited and the price at which sold, cannot be sustained. That would be the measure, if it were proved that the goods could, with due diligence, have been sold at the limited price. There is no such evidence here.

The ordinary rule is that the damages recoverable for a sale below the limit is the difference between the market price at the time of sale and the selling price. And for failure to keep consignor informed, the measure of damages is the actual loss resulting from such failure: Arrott *v.* Brown, 6 Wh., 9; 1 Am. Leading Cases, 854.

Plaintiffs here rely on the actual sales of $41\frac{1}{2}$ boxes made by defendant at an average of $11\frac{1}{2}$ cents per pound as affording *prima facie* evidence of the market value of the whole consignment. It is true that the defendant's evidence of such sales goes against him as an admission, even though rejected as evidence on his behalf; but it seems insufficient to show even *prima facie* value of the whole, taken in connection with the testimony of Stoeckle that they picked out the best and sold

it to the parties named, and in view of the deterioration of the cheese, which is not shown to have been caused by the negligence of the defendant. Plaintiffs might have shown the market value of cheese of this quality, and that its spoiling was caused by defendant's default or negligence, and thus thrust upon him the burden of showing the actual loss. Not having done so, in my opinion, in the light of all the authorities cited, the actual price realized at the sales, including the auction, is presumably the market value, and is the rate at which the defendant must account to the plaintiff.

The defendant having violated his instructions is entitled to no commissions.

He is entitled to credit for the goods furnished Mrs. Noedel (having established their sale and delivery by evidence other than that contained in the books in Webb's handwriting, which were not properly proven), and for the $10 advanced to Noedel.

He is not entitled to any credit for the allowances to purchasers, as they are not properly proven.

I have found no competent legal evidence in the case to sustain the set-off for freights claimed to have been paid by defendant, though owing to the very irregular method of introduction of the evidence on behalf of the defendant, it is possible there may be such evidence that I have overlooked.

The credit claimed for expenses to York, March 6th, 1876, $8.50, has not been proved and is not allowed.

It is too plain for argument or controversy, that neither the $1,500 judgment nor its renewal is a set-off against plaintiffs' claim. As to Mrs. Noedel, both the original judgment and the judgment of revival are absolutely void: Swayne v. Lyon, 17 P. F. S., 436; Finley's Appeal, Id., 453; Hecker v. Haak, 7 Norris, 238. But defendant claims that subsequent to her taking the benefit of the Act of April 3d, 1872, she agreed that the interest then accrued on said judgment should be charged against the proceeds of this consignment of cheese: as per letter "E. E.," J. W. L. This claim is sufficiently disposed of by the statement that said judgment did not bear interest.

The balance of the $402 note is not a proper or available set-off in this case against the plaintiffs' demand. The note, bond or other obligation of a married woman is utterly void, even when given for necessaries for herself and family, or other purposes for which she is enabled to contract. A multitude of authorities might be cited for this. Among them are Vandyke v. Wells, 7 Out. 49; Glyde v. Keister, 8 Casey, 85; Shyder v. Noble, 13 Norris, 286. Same principle is found in McMullen's Appeal, 11 Out., 94.

[Zurn *v.* Noedel.]

The decree made by the Court of Common Pleas of York county under the Act of April 13th, 1872, does not make her a *feme sole* trader : Bovard *v.* Kettering, 5 Out., 181. This note was given for money borrowed by her to pay for property purchased for her at the sheriff's sale of her husband's personalty; and the purchase not connected in any way, disclosed in the evidence, with the cheese business, in which she seems to have engaged. As to her the note was void, and cannot be set off against her demand in this case.

CALCULATION.

| | | |
|---|---:|---:|
| Gross proceeds sale of 41 1-2 boxes cheese as per testimony of defendant . . . . . . . | | $541 41 |
| Net proceeds auction sales . . . . . . | | 29 97 |
| Defendant realized . . . . . . | | $571 38 |
| Less following credits allowed : | | |
| Merchandise November 30th, 1875, . . . . | $ 7 27 | |
| "        December 6th, 1875, . . . . | 21 75 | |
| Cash advance, March 1st, 1875, . . . . | 10 00 | 39 02 |
| Balance due consignee . . . . | | $532 36 |
| Interest from April 29th, 1876, the date of commencing first suit, to February 18th, 1886, . . . | | 313 00 |
| Due plaintiff . . . . . . | | $845 36 |

I award to the plaintiffs, for the use of Bertha Noedel, the sum of eight hundred and forty-five dollars and thirty-six cents with costs.

Exceptions were filed by the plaintiffs and also by the defendant to this report. The defendant's exceptions were, *inter alia,* as follows : The learned Referee erred in his findings of law and of fact as follows :

2. He erred in rejecting the defendant's claim for freights paid on the consigned cheese, which charges are not disputed.

3. He erred in rejecting the defendant's claim for insurance paid by him on the cheese consigned to him by plaintiff, and insured at her instance ; the fact of payment thereof not being disputed.

4. He erred in rejecting the defendant's claim for freights paid on tin foil sent plaintiff on her order, and not disputed ; and for which tin foil the Referee has allowed credit to the defendant.

13. He erred in finding as a fact that said judgment note of $1,500 did not bear interest. The original note produced before the Referee being payable "one year after date, with interest." And the revival of the original judgment by adverse process, also including interest from the date of the note.

[Zurn *v.* Noedel.]

The Referee, pending the confirmation of his report, was elected judge of the 10th judicial district. In disposing of the exceptions he filed an opinion, *inter alia*, as follows:

In 1881 I was appointed Referee in the above case, under the provisions of the Act of Assembly approved the 9th day of April, A. D. 1868, entitled "An Act in relation to Pleading and Judgment, Voluntary Arbitrations, &c., in the 19th Judicial District." The final hearing in the case was had so short a time before the commencement of my judicial term, as to render it impossible to file my report until after that term had commenced. Exceptions having been filed, by both plaintiffs and defendant, to my report, I was asked by counsel on both sides to hear the argument on the exceptions.

On the admission of plaintiffs' counsel, at the argument, that the credits claimed for freight $33.18, insurance $5.82 and freight on tin foil 60 cents, must be allowed to defendant, these exceptions are sustained.

There is an error in the finding by the Referee, as a fact, that the judgment No. 526, April 7th, 1875, for $1,500, Louis Zurn against G. W. Noedel and Bertha Noedel, did not bear interest. This was occasioned by the neglect of defendant's counsel to hand to the Referee the note and warrant of attorney, in which the judgment was entered. Not having the note, I referred to the record, where the judgment had been erroneously entered as though drawn without interest until maturity.

But the course of reasoning which led to the rejection, as a set-off or credit in this case, of the $402 note, would, *a fortiori*, require the rejection of this judgment and the revival of the same, and of both principal and interest.

Except as to the correction of the above stated findings of fact in regard to the interest, these exceptions must be dismissed.

The defendant's 2d, 3d and 4th exceptions having been sustained, he is entitled to a credit of the aggregate of the amounts mentioned in said exceptions, viz.: $40.60, with interest for the period covered by the computation in the Referee's report, viz.: April 29th, 1876, to February 18th, 1886, amounting to $23.89, as per calculation annexed:

| | | | |
|---|---|---|---|
| Amount of award against defendant as per Referee's Report filed February 18th, 1886 . . . . | | | $845 36 |
| Deduct additional credits allowed as per defendant's exceptions, 2, 3, and 4 . . . . . | . $40 60 | | |
| Interest on same, April 29th, 1876—February 18th, 1886 | 23 89 | 64 49 | |
| | | | |
| Amount due plaintiffs, February 18th, 1886 . . | | $780 87 | |
| Interest on same, February 18th, '86—April 9th, '86 . | | 6 67 | |
| | | | |
| | | $787 54 | |

[Zurn *v.* Noedel.]

And now to wit, April 12th, 1886, the exceptions filed by plaintiffs to the report of the Referee are dismissed. The exceptions filed by defendant are dismissed, except 2d, 3d, and 4th, which are sustained. The report of the Referee is modified as appears by the foregoing calculation, and judgment is entered for plaintiffs and against defendant for $787.54 with costs of suit.

The defendant thereupon took this writ and filed the following assignments of error:

1. The Court below erred in dismissing the defendant's 6th exception, filed to the report of the Referee, which exception in part, was as follows:

" The Referee erred in rejecting the defendant's claim for commissions and guarantee, which plaintiff had agreed to allow him."

2. The Court below erred in dismissing the defendant's 12th exception filed to the report of the Referee, which exception was as follows:

" The Referee erred in rejecting the $302 due on the note of plaintiff to the defendant as a credit under the agreement of the consignor and consignee, made after the execution of the note and the shipment of the cheese to the defendant, and under all the circumstances of the case."

3. The Court below erred in dismissing the defendant's 15th exception filed to the report of the Referee, which said exception was as follows: " The Referee erred in rejecting the disbursements and advances disallowed by him; the plaintiff in her letter February 12th, 1876, having directed him to " make now all the disbursements and advances and the interest on the $1500 note, on the above lot of cheese," &c'.

4. The Court erred in dismissing the defendant's 14th exception to the Referee's report which exception was as follows: " He erred in not allowing defendant credit for the interest due on said judgment of $1500.00, which the plaintiff by her letter of February 12th, 1876, directed him to make for himself out of the cheese consigned to him for sale.

5. The Court erred in dismissing the defendant's 9th exception to the Referee's report which exception was as follows: " He erred in rejecting the balance due the defendant on the note of Bertha Noedel to defendant of $402 as a set-off against the plaintiffs in this action."

6. The Court below erred in dismissing the defendant's 11th exception filed to the Referee's report, which said exception was as follows: " The Referee erred in rejecting the judgment note of $1500, against the plaintiffs as a set-off against plaintiffs' claims in favor of the defendant."

[Zurn v. Noedel.]

*W. F. Bay Stewart* and *N. M. Wanner* for plaintiff in error.—

We contend that even if the plaintiff in error did violate his instructions, it resulted in no loss or disadvantage to Mrs. Noedel. He sold the cheese and stood ready to account for it at the prices he received for it and the Referee found that that was all he was chargeable with, and all that he held him responsible for.

Mrs. Noedel's husband was engaged in the manufacture of Limberger cheese. He failed and his stock of unfinished cheese, farming implements, stock on farm, &c., were bought for Mrs. Noedel. She immediately applied for and accepted the benefit of the Act of April 3d, 1872, securing to married women their separate earnings. After so doing she borrowed from Mr. Zurn $400 and gave her note for it at 30 days. She embarked in the manufacture of cheese—the very cheese she afterwards consigned to Mr. Zurn, and out of which she directed him to pay himself.

It is true that we did not trace the money into the cheese, but we traced it into her hands at a time when she was engaged in the manufacture of cheese. She was engaged in that business and no other, unless it was farming. The immediate use she made of the money was in paying for the second lot of articles purchased at the sheriff's sale of her husband's property. She no doubt needed these articles, as her husband had done, in the prosecution of the cheese business. And if she did not use the money in her cheese business she used it in stocking the farm and in farming operations, which is as much of a business as the other; and if she did she is within the plain ruling of this court in Bovard v. Kettering, 5 Out., 181.

Her husband acted as her agent and conducted the correspondence. He knew what disposition she was making of her property. She might give it to a stranger with his consent: Keen v. The City, 8 Phila., 49; Dando's Appeal, 13 Norris, 76. Surely then she could appropriate it to the payment of her honest debts.

And again this Court in Brown's Appeal, said: " While she may not be liable on a contract to sell and deliver her personal property at some future time, yet she cannot repudiate a gift or contract fairly made, under which she has delivered possession of the property : Brown's Appeal, 13 Norris, 367 ; Fryers v. Rishell, 3 Norris, 524.

*H. L. Fisher*, *J. W. Noedel* with him, for defendant in error.—The consignee violated his principal's instructions. He was not entitled to commissions: Brown v. McGrau, 14 Peters, 479 ; Porter v. Patterson, 3 Harris, 229.

The Court properly rejected the balance due on the note of

[Zurn *v.* Noedel.]

$402 signed and given by Mrs. Noedel to Zurn or his order at thirty days in November, 1875. Mrs. Noedel was then a married woman, and although having applied for and received the benefit of the Act of 1872, the evidence conclusively shows, even Zurn's own testimony, that she gave it for so much money borrowed from Zurn upon her own personal credit for the purpose of paying an indebtedness entirely disconnected from the manufacture or sale of cheese, and so the Referee has found, consequently, the note was simply null and void as against her, and so the authorities abundantly show: McMullen's Appeal, 11 Out., 94; Vandyke *v.* Wells, 7 Out., 49; Glyde *v.* Kiester, 8 Casey, 85; Shyder *v.* Noble, 15 Norris, 286.

Mr. Justice PAXSON delivered the opinion of the Court, October 4th, 1886.

We are unable to see any error in the refusal of the Court below to allow the plaintiff in error his claim for commissions. Undoubtedly he would have been entitled to them had he in all things performed his duties as consignee in a proper manner. But the Referee has found that he did not, and we are entirely satisfied with that finding. Even if we were not, and were disposed to review it, we could not do so in the absence of the evidence, the documentary portion of which only is printed.

Nor do we see any error in the disallowance of the $1,500 judgment. It was given by Mrs. Noedel when *covert,* and before she applied to the Court for the benefit of the Act of April 3d, 1872. It was not, under all the authorities, a binding obligation upon her.

But we think the Court below fell into error in rejecting the claim of the plaintiff in error to be allowed the interest on this judgment, and also for the balance of the note of $402.

Mrs. Noedel (defendant in error), had consigned to the plaintiff in error a large amount of Limberger cheese which she had manufactured on a farm in York County. The farm appears to have been owned, at least carried on, by her husband at one time. He failed in business, and some personal property he had there, including some Limberger cheese, was purchased by his wife, Mrs. Noedel, who continued the business of manufacturing this species of cheese in connection with the farm. It was found by the Referee that she had sufficient separate estate to make the purchase. The $402 note referred to grew out of this transaction. Prior to her giving it she had applied to the Court of Common Pleas for the benefit of the Act of April 3d, 1872, which secures to a married woman her separate earnings. This brings the case within the ruling of Bovard *v.* Kettering, 101 Pa. St., 181. The

[Strine v. Foltz et al.]

learned Judge below held that Bovard v. Kettering did not apply, for the reason, in part, that the proceeds of the $402 note were not traced directly into the manufacture of the cheese consigned to the plaintiff in error. We think this was error. The money was borrowed to enable her to engage in the business which her husband had previously followed. She did so engage, and as a result thereof shipped a large amount of cheese to the plaintiff in error, who had advanced the $402. In her letter of February 12th, 1876, she authorized the plaintiff in error to retain out of the proceeds of the consignment the interest on the $1,500 judgment, and all disbursements and advances. She was not obliged to pay the principal or interest of this judgment for the reason already given, yet she had a right to do so, and it is no part of our duty to prevent a married woman from being honest. Her consignee held this judgment against her, and her letter to him was an appropriation of so much of her money in his hands to the payment of this interest.

Under the ruling in Bovard v. Kettering, she was clearly liable on the note, and it did not need her letter to her consignor to justify him in deducting the amount from the sales of the cheese.

Both of these claims should have been allowed.

Judgment reversed, and a *venire facias de novo* awarded.